UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA F.,[1] <br>     Plaintiff <br> v. <br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br>     Defendant. | Case No. 5:18-cv-00685-GJS <br><br> **MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Julia F. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11 and 12] and briefs addressing disputed issues in the case [Dkt. 21 ("Pl. Br."), Dkt. 23 ("Def. Br.")]. The matter is now ready for decision. For the reasons discussed below, the Court finds that this matter should be affirmed.

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed an application for DIB alleging disability since April 1, 2011, based primarily on osteoarthritis. [Dkt. 16, Administrative Record ("AR") 133-34, 148.] Plaintiff's application was denied initially, on reconsideration, and after a hearing before Administrative Law Judge Jesse J. Pease ("ALJ Pease"). [AR 19-25, 29-56, 75-78, 82-87.] The Appeals Council denied review of ALJ Pease's decision. [AR 1-4, 8-11.]

Plaintiff filed a civil action in this District (5:14-cv-01856-CW). [AR 349-58.] On March 27, 2015, the Court issued an Order and Judgment remanding this matter pursuant to a stipulated remand by the parties. [AR 343-46.] The Appeals Council issued an order remanding the case. [AR 277-78.]

After conducting an administrative hearing, ALJ Pease issued a second decision denying Plaintiff's application for DIB benefits. [AR 226-35, 240-73.] Plaintiff then filed a second civil action in this District (5:16-cv-01336-GJS). [AR 623-26.] On January 26, 2017, this Court issued an Order and Judgment remanding this matter pursuant to a stipulated remand. [AR 627-30.] On March 27, 2017, the Appeals Council issued an order remanding the case for further consideration of a medical source statement from one of Plaintiff's treating physicians, Dr. Bikramjit Ahluwalia. [AR 635-36.]

On August 16, 2017, Administrative Law Judge Dante M. Alegre ("the ALJ") conducted Plaintiff's third administrative hearing. [AR 582-605.] On February 2, 2018, the ALJ issued an unfavorable decision applying the five-step sequential evaluation process for assessing disability [AR 566-76]. 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of April 1, 2011, through her date last insured of December 31, 2014. [AR 569.] At step two, the ALJ determined that Plaintiff suffered from the severe impairments of osteoarthritis with polyarthralgia and obesity. [AR 569.] The ALJ determined at step three that

Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations ("the Listings") [AR 570]. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work (20 C.F.R. § 404.1567(b)), including the ability to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk 6 hours in an 8-hour day, sit 6 hours in an 8-hour day, perform fine and gross manipulation with both upper extremities frequently, and climb, balance stoop, kneel, and crawl occasionally. [AR 570.] At step four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a site director, as that job was actually performed. [AR 573-74.] At step five, the ALJ further found that Plaintiff was capable of performing other work that exists in significant numbers in the economy, including representative occupations of office helper, mail clerk, and routing clerk. [AR 574-75.]

Plaintiff filed this action on April 4, 2018. Plaintiff claims the ALJ erred by rejecting Dr. Ahluwalia's opinion regarding her functional limitations and failing to properly consider her subjective symptom testimony. [Pl. Br. at 7-15.] Plaintiff requests reversal and remand for payment of benefits or, in the alternative, crediting as true Dr. Ahluwalia's opinion and Plaintiff's subjective symptom testimony and remanding for further administrative proceedings. [Pl. Br. at 15-16.] Defendant asserts that the ALJ's decision should be affirmed. [Def. Br. at 17-18.]

### III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted).

"Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

### A. Dr. Ahluwalia

Plaintiff contends that the ALJ erred by failing to properly consider the opinion of her treating rheumatologist, Dr. Ahluwalia. The Court finds that a remand or reversal on this basis is not warranted.

#### 1. Federal Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009); *see also* 20 C.F.R. § 404.1527. In general, a treating physician's opinion is entitled to more weight than an examining physician's opinion and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The medical opinion of a claimant's

4

treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).[2]

An ALJ must provide clear and convincing reasons supported by substantial evidence to reject the uncontradicted opinion of a treating or examining physician. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). Where such an opinion is contradicted, however, an ALJ may reject it only by stating specific and legitimate reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216; *Trevizo*, 871 F.3d at 675. The ALJ can satisfy this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (when a treating physician's opinion is not given controlling weight, factors such as the nature, extent, and length of the treatment relationship, the frequency of examinations, the specialization of the physician, and whether the physician's opinion is supported by and consistent with the record should be considered in determining the weight to give the opinion).

**2. Background**

In June 2011, Dr. Ahluwalia began treating Plaintiff for her complaints of

---

[2] For claims filed on or after March 27, 2017, the opinions of treating physicians are not given deference over the opinions of non-treating physicians. *See* 20 C.F.R. § 404.1520c (providing that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"); 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). Because Plaintiff's claim for DIB was filed before March 27, 2017, the medical evidence is evaluated pursuant to the treating physician rule discussed above. *See* 20 C.F.R. § 404.1527; [Def. Br. at 5 n.5 (citing Social Security Ruling ("SSR") 96-2p).]

5

pain and arthralgias. [AR 193-94.] Dr. Ahluwalia prescribed medication for Plaintiff, but noted that her grip was "5/5" and her physical examination and review of systems were normal. [AR 193-94.] In October 2011, Dr. Ahluwalia reported that Plaintiff was feeling a little better, as the prescribed medication was helping. [AR 191-92.] In February 2012, Dr. Ahluwalia reported that Plaintiff was able to do more activities in the morning and was experiencing improvement with the medication, but she complained of weakness in her hands and would drop things by the end of the day. [AR 190.] In May 2012, Plaintiff complained of pain in her ankles. [AR 188.] In August 2012, Dr. Ahluwalia reported that medication was helping Plaintiff's joints. [AR 207.] In November 2012, Plaintiff complained of some discomfort in her joints due to the cold weather and Dr. Ahluwalia prescribed a new medication. [AR 209.] In January 2013, Plaintiff reported she was feeling better and having less pain. [AR 211.]

On April 2, 2013, Dr. Ahluwalia completed an Arthritis Medical Source Statement indicating that Plaintiff's ability to work was significantly limited. [AR 203-06.] He diagnosed Plaintiff with osteoarthrosis, with joint stiffness and pain primarily in her hands and back. [AR 203.] He also checked boxes indicating that Plaintiff had tenderness, crepitus, reduced grip strength, and muscle spasms. [AR 203.] Dr. Ahluwalia assessed Plaintiff with the following work-related limitations: walking 2 blocks before needing to rest; standing 30 minutes at a time; sitting 1 hour at a time; standing and/or walking 2 hours in an 8-hour workday; sitting 2 hours in an 8-hour workday; lifting and carrying less than 10 pounds frequently and 10 pounds occasionally; grasping, turning and twisting objects with her hands no more than 10 percent of the workday; and reaching in front of her body with her arms no more than 10 percent of the workday. [AR 204-06.] Dr. Ahluwalia found Plaintiff was precluded from twisting, stooping/bending, crouching/squatting, climbing ladders and stairs, using her fingers for fine manipulations, and using her arms for reaching overhead. [AR 205-06.] Dr. Ahluwalia opined that Plaintiff would need to

be able to shift positions at will, walk around every 45 minutes during an 8-hour workday, and take unscheduled breaks (15 minutes) once or twice a week. [AR 205-06.] Dr. Ahluwalia also found that Plaintiff was likely to be "off task" 15 percent of the workday and absent from work about two days per month. [AR 206.]

Dr. Ahluwalia continued to treat Plaintiff for joint stiffness and periodic complaints of pain in her shoulders, ankles, and hands through her date last insured of December 31, 2014. [AR 213, 481, 486, 543, 545.] Dr. Ahluwalia observed some arthritic changes in Plaintiff's hands (Heberden's nodes and Bouchard's nodes), but no signs of synovitis. [AR 481, 486, 543, 545.] On several occasions, Dr. Ahluwalia reported that medication helped Plaintiff's pain and symptoms. [AR 213, 484, 545, 547.]

### 3. Analysis

The ALJ gave "little weight" to the work restrictions assessed by Dr. Ahluwalia in the Arthritis Medical Source Statement, finding that they were "overly restricted" and unsupported by the medical evidence. [AR 203-06, 571-73.] The ALJ noted that many of Plaintiff's treatment records prior to the date last insured reflected normal musculoskeletal and physical examinations and no complaints of arthritis or musculoskeletal problems. [AR 216-18, 491, 497, 510-11, 514-15, 525-26, 528-29, 571-72.] In addition, the consultative orthopedist who examined Plaintiff in October 2012, Dr. Payam Moazzaz, opined that Plaintiff was capable of working.[3] [AR 197-201, 573.] As Dr. Ahluwalia's findings conflicted with the opinions of other doctors, the ALJ needed to provide specific and legitimate reasons

---

[3] Dr. Moazzaz found Plaintiff could stand and walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, lift 50 pounds occasionally and 25 pounds frequently, engage in postural activities frequently, and was not restricted in performing overhead activities and using her hands for fine and gross manipulative movements. [AR 201.] The ALJ gave "some weight" to Dr. Moazzaz's opinion. [AR 573.] The ALJ accepted Dr. Moazzaz's conclusion that Plaintiff was capable of working, but found more restrictive exertional and postural limitations were warranted, as set forth in the RFC. [AR 573.]

7

supported by substantial evidence in the record to reject his assessment of Plaintiff's limitations. *See Bayliss*, 427 F.3d at 1216. The ALJ did so here.

The ALJ found Dr. Ahluwalia's treatment records lacked significant, objective evidence to support the extreme work-related limitations assessed. [AR 203-06, 571-73.] An ALJ may properly reject a medical opinion that conflicts with the physician's own treatment notes or is unsupported by the record as a whole. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected when treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole . . . or by objective medical findings"). The ALJ found there was no objective evidence to support Dr. Ahluwalia's opinion that Plaintiff needs unscheduled breaks, is limited to lifting 10 pounds, and is precluded from activities such as using her hands to grasp, turn, or twist objects more than 10 percent of a workday and twisting, stooping, crouching, and climbing stairs and ladders. [AR 205-06, 572-73.] X-rays of Plaintiff's wrist, hand, and shoulder showed no abnormalities and Dr. Ahluwalia's examination records revealed no evidence of reduced grip strength, synovitis, or muscle spasm. [AR 193, 209, 211, 486, 494, 500, 543, 545, 571-73, 779.] While Dr. Ahluwalia observed Heberden's and Bouchard's nodes in Plaintiff's fingers and Plaintiff complained of hand cramping and weakness, Dr. Ahluwalia did not associate these conditions with the extreme hand restrictions assessed. [AR 206, 481, 484, 486, 543, 547, 571, 573.] Additionally, the ALJ noted that Dr. Ahluwalia reported in early 2014 that Plaintiff had been "walking more than before" and had been "able to lose weight," as her medication was helping her symptoms. [AR 484, 571, 573.] These findings did not support Dr. Ahluwalia's opinion that Plaintiff was limited to walking no more than 2 blocks at a time. [AR 204, 572.] Thus, the lack of objective evidence was a specific

and legitimate reason for discounting Dr. Ahluwalia's opinion regarding Plaintiff's functional limitations.

The ALJ also relied on Plaintiff's statements describing her symptoms and condition to support rejection of Dr. Ahluwalia's opinion. [AR 572-73.] When Plaintiff was examined by other treating sources in 2014, she often reported "no complaints or concerns" and denied any "musculoskeletal symptoms." [AR 496, 510, 514, 525, 528, 549, 572.] And, as noted, Plaintiff admitted that she had been able to walk more and lose weight in January 2014, as medication was helping her symptoms. [AR 484, 571, 573.] Other records from Dr. Ahluwalia also reflect Plaintiff's reports of improvement with medication. [AR 190, 207, 211, 213, 547.] Thus, Plaintiff's statements about her lack of symptoms and improved condition supported the ALJ's decision to reject the extreme limitations assessed by Dr. Ahluwalia. *See Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989) (finding that testimony from the claimant that conflicted with her treating physician's opinion, among other things, supported the ALJ's rejection of the treating physician's opinion); *see also Thacker v. Comm'r of Soc. Sec.*, No. 1:11-cv-00613-LJO, 2012 WL 1978701, at *11 (E.D. Cal. June 1, 2012) (finding evidence that the plaintiff's medical condition was improving was a clear and convincing reason for rejecting medical opinion testimony).

Accordingly, the ALJ's consideration of Dr. Ahluwalia's opinion was supported by substantial evidence.

**B. Plaintiff's Subjective Symptom Testimony**

Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting her testimony regarding her subjective symptoms and functional limitations. [Pl. Br. at 13-15.]

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the symptoms alleged and there is no affirmative evidence of malingering, the ALJ must offer

"specific, clear and convincing reasons" to reject the claimant's testimony about the severity of her symptoms. *Trevizo*, 871 F.3d at 678 (citation omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ must specifically identify the testimony that is being rejected and explain what evidence undermines that testimony. *See Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014); *Reddick*, 157 F.3d at 722; *see also Trevizo*, 871 F.3d at 679, n.5 (clarifying that "assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of a claimant's symptoms . . .' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness") (quoting SSR 16-3p).

Plaintiff alleged that her ability to work is limited due to osteoarthritis and pain and swelling in her hands and joints.[4] [AR 148, 571, 592, 597-98.] She testified that she stopped working as a site director at a childcare program because her son with special needs had a lot of doctor appointments. [AR 594-95.] Plaintiff claimed that she tried to return to school to study social work, but she could not complete her studies due to problems with arthritis. [AR 595.] Plaintiff stated that she is able to drive in the mornings for about "half the day," but she sometimes has trouble gripping the steering wheel due to joint pain. [AR 571, 592.]

The ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms, Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent alleged. [AR 571.] The ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. [AR 571-72.] *See Trevizo*, 871 F.3d at 678; *Smolen*, 80 F.3d at 1284.

First, the ALJ found that Plaintiff's statements concerning her symptoms and

---

[4] The ALJ determined that Plaintiff's complaints of depression, anxiety, and panic attacks were not severe mental impairments. [AR 569, 596.]

functional limitations were unsupported by the objective medical evidence. [AR 571.] As discussed above, many of Plaintiff's treatment records reflected normal musculoskeletal and physical examinations and unremarkable imaging studies. [AR 187, 217, 491, 494, 497, 500, 510-11, 514-15, 525-26, 528-29, 571-72, 779.] While medical evidence alone is not a basis for rejecting pain testimony, it is one factor that the ALJ is permitted to consider. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Second, Plaintiff's subjective reports about her symptoms and condition conflicted with her complaints of disabling osteoarthritis and joint pain. [AR 571-72.] As noted, Plaintiff often reported having no musculoskeletal problems, without any complaints about arthritis. [AR 148, 217, 491, 497, 510-11, 514-15, 525-26, 528-29, 571-72, 595-98.] The inconsistency in Plaintiff's statements was a specific, clear and convincing reason on which the ALJ could properly rely in rejecting Plaintiff's subjective symptom testimony. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ may use "ordinary techniques of credibility evaluation," such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony); *Smolen*, 80 F.3d at 1284 (ALJ may consider "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid"); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on inconsistencies in the claimant's testimony).

Finally, the ALJ found that Plaintiff's treatment was limited to only pain medication. [AR 571.] An ALJ may properly rely on the fact that only routine or conservative treatment has been prescribed. *See Johnson*, 60 F.3d at 1434; *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (finding that plaintiff's claim that she experienced pain "approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). And, as discussed above, Plaintiff often reported that medication helped her symptoms. [AR 190, 207, 211,

213, 484, 547, 571.] Thus, Plaintiff's relatively routine and conservative treatment was a specific, clear and convincing reason to discount Plaintiff's subjective symptom testimony.

Accordingly, reversal is not warranted based on the ALJ's consideration of Plaintiff's testimony regarding the nature and severity of her symptoms.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: April 10, 2019

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE